# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered as of July 27, 2011, subject to approval

of the United States District Court for the District of New Jersey, among and between Plaintiffs

Chris Doering, David Mahshigian, and Donna DeMarco, for themselves and on behalf of the

putative Settlement Class as defined below, and Defendants MEGA Brands, Inc., MEGA

Brands America, Inc., and Target Corporation (collectively, "Parties").

## RECITALS

WHEREAS, all defined terms used herein shall have the meaning set out in Section I

below;

WHEREAS, between March 31, 2006 and March 17, 2008, MEGA Brands announced

recalls of certain toys, which are identified in Exhibit A attached;

WHEREAS, in connection with those recalls, individuals have brought two separate

putative class actions in federal court in the District of New Jersey;

WHEREAS, a complaint was filed on August 1, 2008, that consolidated the two putative

class actions into one action;

WHEREAS, in those actions, various claims have been asserted against Defendants

based on their purchase and/or acquisition of toys subject to the various recalls or otherwise

allegedly defective (defined below), including that Defendants are strictly liable for alleged

damages, alleged breach of warranties, alleged negligence, alleged unjust enrichment, alleged

violation of statutes prohibiting unfair or deceptive acts or practices, and alleged violations of

consumer protection acts;

WHEREAS, in the actions, individuals have claimed they sustained damages as a result

of Defendants' actions;

WHEREAS, Defendants deny allegations of unlawful or improper conduct or damages;

WHEREAS on January 30, 2009, the Court issued an order appointing Kaplan Fox & Kilsheimer LLP and Robbins Geller Rudman & Dowd LLP as Interim Co-lead Counsel ("Plaintiffs' Lead Counsel");

WHEREAS, the Parties recognize that the outcome of the action is uncertain, and that a final resolution through the litigation process would require several years of protracted adversarial litigation and appeals; involve substantial risk and expense; cause the distraction and diversion of the Defendants' personnel and resources; and result in additional expenses associated with possible future litigation raising similar or duplicative claims. Plaintiffs' Lead Counsel and Plaintiffs have concluded, after inquiry and investigation of the facts, that the Settlement is fair, reasonable, adequate and in the best interests of the Class; and the Parties and their counsel have agreed to resolve the action as a class action settlement according to the terms of this Settlement Agreement;

WHEREAS, Defendants deny wrongdoing and liability, but have concluded that they will enter into this Settlement Agreement, among other reasons, in order to avoid the further expense, inconvenience, burden, distractions, uncertainty, and risk of litigation and any other present or future litigation arising out of the facts that gave rise to the litigation in the Action;

WHEREAS, the Parties acknowledge and agree that the Parties' respective claims in and defenses to the Action were made in good faith and in accordance with Rule 11 of the Federal Rules of Civil Procedure. The Final Approval Order and Judgment will contain a statement that during the course of the litigation, the Parties and their respective counsel at all times acted in good faith.

NOW, THEREFORE, without (a) any admission or concession on the part of the Plaintiffs of the lack of merit of the Action whatsoever, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by any of the Defendants,

2

it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs, the Settlement Class, and the Defendants, that all Claims be forever settled, compromised, released and dismissed on the merits and with prejudice, subject to the Court's approval on the following terms and conditions:

## I.   DEFINITIONS

Under this Settlement Agreement, the following terms shall have the meanings set forth below:

A.    "Action" means *Berry v. MEGA Brands America Inc., et al.*, Case No. 2:08-cv-1750 (Consolidated).

B.    "Agreement" means this Settlement Agreement, inclusive of all exhibits and the addendum hereto.

C.    "CAFA Notice" means the notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Section III.D.6.

D.    "Claim" and "Claims" mean all claims, demands, actions, suits, causes of action, allegations of wrongdoing, and liabilities by a Settlement Class Member against a Released Party that was or could have been brought in the Action.

E.    "Claims Administration" means any and all actions taken by the Claims Administrator in furtherance of the terms of this Settlement.

F.    "Claims Administrator" means Rust Consulting, which shall be used for Claims Administration by Settlement Class Members.

G.    "Claims Deadline" shall have the meaning assigned to it in § II.A.3. of the Agreement.

H.    "Claim Form" means the Court approved form to be submitted by Settlement

Class Members to the Claims Administrator in the form of Exhibit B hereto.

I.    "Class Member" means a person or entity belonging to the Settlement Class.

J.    "Class Notice" means the forms of notice, attached hereto as Exhibits C and D agreed to by the Parties, or such other form as may be approved by the Court that, among other things, informs the Class Members of: (i) the certification of the Action for settlement purposes; (ii) the date and location of the Final Approval Hearing; (iii) the elements of the Settlement Agreement; (iv) the process by which Class Members may Opt Out of the Settlement Class or object to the Settlement Agreement; and (v) the process by which Settlement Class Members may apply to obtain compensation from the Settlement.

K.    "CPSC" means the Consumer Product Safety Commission.

L.    "Defendants" means MEGA Brands, Inc., MEGA Brands America, Inc., and Target Corporation.

M.    "Defendants' Counsel" means Patton Boggs LLP and Kasowitz, Benson, Torres & Friedman LLP.

N.    "Effective Date" shall mean the next business day following the last date on which a notice of appeal directed to the entry of the Final Approval Order and Judgment could have been timely filed but with no notice of appeal having been filed; or, should an appeal be filed, it shall mean the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal is permitted.

O.    "Final Approval Hearing Date" shall mean the hearing date set by the Court.

P.    "Final Approval Order and Judgment" shall have the meaning assigned in § III.G.1. of the Settlement Agreement.

Q.    "Magnet Toys" or "MT" means (a) the toys subject to the Recalls; (b) magnet-based toys not subject to the Recalls and listed in Exhibit E attached; and (c) the Specialty Toys

4

listed in Exhibit F attached.

R.    "Memorandum of Understanding" means the document dated May 16, 2011, that set forth the terms of the settlement reached by the Parties. The Memorandum of Understanding is superseded by this Settlement Agreement.

S.    "Notice" means the notice provided to the Class Members pursuant to the Federal Rules of Civil Procedure and the mechanisms set forth in § III.D of this Agreement.

T.    "Notice Date" means the date on which the Claims Administrator publishes the Notices provided for in § III.D of this Agreement.

U.    "Objection Date" means the date by which Class Members must file written notice of any objection or opposition to the Settlement Agreement or any part or provision thereof in the Court. Notice of such objection shall be served pursuant to § III.F.

V.    "Opt Out" shall have the meaning assigned to it § III.E.1. of the Agreement.

W.    "Opt Out Deadline" shall have the meaning assigned to it in § III.E.2. of the Agreement.

X.    "Parties" shall have the meaning assigned to it in the preamble of the Agreement.

Y.    "Person" or "Persons" means all persons and entities (including without limitation natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, associations, partnerships, limited liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs and assigns).

Z.    "Plaintiffs" means Chris Doering, David Mahshigian, and Donna DeMarco.

AA.    "Plaintiffs' Lead Counsel" means Kaplan Fox & Kilsheimer LLP and Robbins Geller Rudman & Dowd LLP, who were appointed as Interim Co-lead Counsel by the Court.

BB.    "Preliminary Approval" means the entry by the Court of the Preliminary

Approval Order.

CC.    "Preliminary Approval Order" means the Order to be presented to the Court in substantially the same form as Exhibit G attached, which, if entered by the Court, will preliminarily approve the Settlement Agreement, certify the Settlement Class, and approve the Class Notice in substantially the same form as Exhibits C and D.

DD.    "Recalls" means the CPSC recalls announced by MEGA Brands of toys between March 31, 2006 and March 17, 2008.

EE.    "Recalled Toy" means any Magnet Toy subject to any CPSC recalls announced by MEGA Brands between March 31, 2006 and March 17, 2008.

FF.    "Released Claims" are defined in § IV.A. below.

GG.    "Released Party" means all Defendants and any entity that manufactured, tested, inspected, audited, certified, purchased, distributed, licensed, transported, marketed, advertised, donated, promoted, sold or offered for sale at wholesale or retail any MT, or any part thereof, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, customers, subrogees and assigns. It is expressly understood that, to the extent a Released Party is not a Party to the Agreement, all such Released Parties are intended third party beneficiaries of the Agreement.

HH.    "Releasing Party" means each Plaintiff and each Settlement Class Member and any Person claiming by or through him/her/it as his/her/its spouse, child, ward, next friend, heir, devisee, beneficiary, legatee, invitee, employee, customer, associate, co-owner, attorney, agent, administrator, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, or affiliate.

6

II.   "Settlement Class" means the class of all persons who, during the period from September 2003 to the present, purchased, possessed, and/or acquired Magnet Toys, excluding Defendants and the Released Party.

JJ.   "Settlement Class Member" is a person or entity fitting the definition of the Settlement Class and who has not validly and timely sought to Opt Out of the Settlement Class pursuant to § III.E. below.

## II. CLAIMS PROCEDURES AND SETTLEMENT CONSIDERATION

A.   <u>Claims Procedures Applicable to All Claims</u>

All Settlement Class Members shall be bound by the claims procedures set forth below.

1.   <u>Submission of Claim Form</u>: The Settlement Class Member shall sign and submit a completed Claim Form in the form of Exhibit B hereto together with all other documentation, if any, set forth below either online or on the Settlement Website. A Claim Form must be submitted by regular First Class mail, fax or by electronic mail in Portable Document Format ("PDF") to the Claims Administrator. Claim Forms will be made available by mail and for downloading from the Settlement Website maintained by the Claims Administrator and may be made available on the websites of Plaintiffs' Lead Counsel. Defendants agree to keep the information provided by Class Members on Claim Forms confidential, shall be used only for the purposes of administering the Settlement, and shall not be used for marketing or any other commercial purposes.

2.   <u>Verification</u>: The Settlement Class Member shall sign the verification by hand on the Claim Form that states as follows:

> I affirm that the above information is true and correct to the
> best of my knowledge. I understand that if any of the
> foregoing is **willfully** false, I may be subject to punishment.
> I further understand that the above information will be
> reviewed and verified by a representative from the Claims

Administrator.

3.   Claims Deadline and Administration

(a)   All Claims must be submitted with the appropriate Claim Form and/or Declaration and received by the Claims Administrator by the Claims Deadline to be agreed upon between the Parties. The Claims Deadline shall be set forth in the Class Notice, the websites of the Claims Administrator and Plaintiffs' Lead Counsel, as well as on the front page of all Claims Forms.

(b)   Subject to the discretion of the Court, Class Members who do not timely submit a completed Claim Form shall not be eligible to participate in the settlement consideration. However, the Claims Administrator may, in its discretion, permit a Class Member who makes a timely Claim to remedy deficiencies in such Class Member's Claim Form or related documentation.

(c)   The Claims Administrator shall maintain records of Claims submitted. The Claims Administrator shall maintain all such records until all Claims have been finally resolved, and such records will be made available upon request to Defendants' Counsel or Plaintiffs' Lead Counsel.

(d)   The Claims Administrator will be instructed by the Parties to review and validate all Claims submitted by Class Members.  The Claims Administrator shall have the discretion to review Claims with the objectives of efficiency and fairness to the Parties and the Class Members. The Claims Administrator shall have the right to contact Class Members to validate Claims. The validity of Claims will be assessed in their totality. The inability of a Class Member to provide precise dates of purchase, price paid, or the identity of

8

the selling retailer will not per se invalidate a Claim but will be assessed with all other factors for purpose of validation. Issues regarding the validity of Claims that cannot be resolved by the Claims Administrator shall be submitted to Defendants' Counsel and Plaintiffs' Lead Counsel for resolution and, if no resolution is reached, to the Court.

(e)     The Claims Administrator shall cause a website to be created containing Claims information and relevant documents, including but not limited to the Class Notice; Claims Forms; means to identify all MT, including purchase date ranges; the dates of the Recalls; and the Recalled Toys affected by such recalls. Defendants shall pay the cost of creating and maintaining this website. The website may be rendered inactive at MEGA Brands' sole discretion after the Claims Deadline. The Parties shall agree on the information and documents to be posted on this website.

(f)     Defendants shall pay the costs of Notice and Claims Administration.

4.     Class Member Relief: Class Members who timely file a Claim(s), provide the required proof or documentation, where applicable, and comply with all other conditions and requirements, as validated by the Claims Administrator, shall have the right to obtain relief, as detailed below.

(a)     For Class Members Who Returned Recalled Toys Pursuant To A Recall:

Any Class Member who returned a Recalled Toy(s) pursuant to a Recall prior to the Notice Date shall receive cash in the amount of $5.00 for each Recalled Toy

returned up to a maximum of three (3) toys.

(b)     For Class Members Who Did Not Return Recalled Toys Pursuant To A Recall And Who Have Documentary Evidence Of The Purchase Price Of An MT:

Any Class Member who is in possession of a receipt or some other form of evidence documenting the price paid for one or more MT, shall receive a full cash refund without any limitation on the number of MTs for which a claim is submitted.

(c)     For Class Members Who Did Not Return Recalled Toys Pursuant To A Recall And Who Have Physical Evidence Of The Purchase And/Or Acquisition Of An MT:

Any Class Member who does not have any evidence of the price paid for any MT, but is in possession of other physical evidence of the specific MT purchased and/or acquired, shall receive a cash refund in the amount of the Suggested List Price with a limitation of three (3) toys per Class Member.  Other physical evidence shall constitute any of the following: (a) the original manufacturer packaging in which the MT was located; (b) a manual contained in the original manufacturer packaging; or (c) the entire toy itself, or at least one piece from any of the toys identified in Exhibit F attached hereto.

(d)     For Class Members Who Have Toy Parts That Cannot Be Matched To A Toy Listed On Exhibits A, E and/or F, But Have No Other Evidence Of Purchase And/Or Acquisition Of An MT :

Any Class Member who only has parts of toys shall receive cash that will be determined based on gross weight of the toy parts submitted as part of the claim.  The cash amount will be based on the chart attached hereto as Exhibit H.

(e)     For Class Members Who Have No Physical Or Documentary

Evidence Of Purchase And/Or Acquisition Of An MT:

Any Class Member who has no physical or documentary evidence of purchase and/or acquisition of an MT, but provides a Declaration (as set forth in the Claim Form), under penalty of perjury, that the Class Member purchased and/or acquired one or more MT, shall receive cash in the amount of $10.00 per toy as set forth in the Declaration with a limitation of two (2) toys per Class Member.

B.    Notification to Claimants

The Claims Administrator shall notify a Settlement Class Member within forty-five (45) days of receiving the Claim Form and all necessary information, or as soon thereafter as reasonably practicable, whether the Claim will be accepted and paid pursuant to the terms of this Settlement Agreement or rejected.

C.    *Cy Pres*

MEGA Brands will make total *cy pres* contributions in the amount of $100,000, in the form of both cash and product, to a newly created organization called the "MEGA Brands Foundation" (the "Foundation"), which will be formed for the purpose of providing services for the benefit of organizations addressing children's health issues.  The Foundation will acknowledge the Plaintiffs and undersigned counsel in connection with the announcement of the creation of the Foundation.

D.    Incentive Awards

Defendants shall pay each of the Plaintiffs $1,000 as an incentive award for the inconvenience and time spent in bringing this Action, searching for relevant toys, toy parts and documents and sitting for depositions. The incentive awards shall be paid by Defendants in the same manner as described in § II.E.3.

E.    Plaintiffs' Attorneys' Fees and Expenses

      1.    Application:  Defendants have agreed to pay to Plaintiffs' Lead Counsel up to $3.5 million in attorneys' fees and expenses, subject to Court approval.

      2.    Defendants' Position:  Defendants will not oppose the application by Plaintiffs' Lead Counsel for attorneys' fees and expenses.

      3.    Timing of Payment:  Defendants will tender payment to an escrow account established by Plaintiffs' Lead Counsel no later than ten (10) business days following the entry of the Final Approval Order and Judgment as well as approval of such fees and expenses.  Plaintiffs' Lead Counsel are permitted to withdraw the funds in the escrow account immediately following the Effective Date.

### III.    COURT APPROVAL, CLASS NOTICE, OBJECTION PROCEDURES

A.    Reasonable Efforts

Plaintiffs' Lead Counsel and Defendants' Counsel agree that they will use reasonable efforts to (i) recommend and obtain approval of this Settlement Agreement by the Court pursuant to Rule 23(e); (ii) carry out the terms of this Settlement Agreement; (iii) support this Settlement Agreement in all public statements; and (iv) secure the prompt, complete and final dismissal with prejudice of the Action against the Released Party.

B.    Motion for Preliminary Approval

      1.    Following the execution of this Agreement, Plaintiffs' Lead Counsel and Defendants' Counsel shall file in the Court a joint motion for Preliminary Approval that seeks entry of a proposed Preliminary Approval Order (substantially in the form attached hereto as Exhibit G) that would, for settlement purposes only:

        (a)    preliminarily approve this Settlement Agreement;

        (b)    certify a Settlement Class under Federal Rules of Civil Procedure

23(a) and (b)(3) to be comprised of the Settlement Class Members;

        (c)     approve the proposed Class Notice in the form substantially similar to the form attached hereto as Exhibits C and D; and

        (d)     appoint the Claims Administrator for the Notice and administration of the Settlement.

Defendants shall join in this motion, will agree that the Settlement Agreement should be preliminarily approved, and will not contest certification of the Settlement Class undertaken for the sole purpose of effectuating this Settlement Agreement.

C.     Certification of Settlement Class

1.     Class Definition:  For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Plaintiffs' Lead Counsel agree to seek certification of the Settlement Class as defined in § I.II. above, pursuant to Federal Rules of Civil Procedure 23(a).

2.     Class Certified for Settlement Purposes Only:  Nothing in this Settlement Agreement shall be construed as an admission by the Released Party that the Action or any similar case is amenable to class certification for trial purposes or any purposes other than for implementation of the terms of this Settlement Agreement.  Furthermore, nothing in this Settlement Agreement shall prevent Defendants from opposing class certification or seeking de-certification of the certified Settlement Class if final approval of this Settlement Agreement is not obtained by the Court or not upheld on appeal.  The certification of the Settlement Class shall not be treated as the adjudication of any fact or issue for any purpose other than this Settlement Agreement and shall not be considered as law of the case, *res judicata*, or collateral estoppel in any other proceeding.  Until and unless the Settlement Agreement reaches the Effective Date, the certification of the Settlement Class shall not be treated as the adjudication

13

of any fact or issue and shall not be considered as law of the case, *res judicata*, or collateral estoppel in this proceeding.

    D.    <u>Notice</u>

    1.    <u>Form of Class Notice</u>:  Subject to approval of the Court, Class Notice shall be made by publication as set forth in § III.D. 2.(c) below and direct mail as set forth in § III.D.2.(b) below in the forms attached hereto as Exhibits C and D.

    2.    <u>Dissemination of Notice</u>:

    (a)    <u>Notice Date</u>:  Subject to approval by the Court, the Class Notice shall be reasonably disseminated within forty-five (45) days of the entry of the Preliminary Approval Order by the Court.

    (b)    <u>Notice by Direct Mail</u>:  The Claims Administrator shall cause Notice to be disseminated by direct mail to (1) all persons who provided their contact information to the Defendants in connection with the Recalls.  Defendants shall provide the Claims Administrator on a confidential basis the names and address of all such persons.

    (c)    <u>Notice By Publication</u>:  Subject to approval by the Court, the Class Notice shall be published as follows:  (a) direct notice mailed to those persons who contacted MEGA Brands in connection with any of the Recalls and where MEGA Brands possesses contact information for such persons; (b) one-third page notice to be published once in Parents magazine; (c) one-eighth page notice to be published once in a weekday edition of the USA Today; (d) a web-based banner ad program consisting of at least 15 million impressions; and (e) the dissemination of a mutually agreed upon press release over PR Newswire or some similar internet-based wire service ("Press Release") with national reach once after preliminary approval of the Settlement and once after final approval of the Settlement.  Defendants shall also request that their major retailers post the Class Notice in their stores.  Further, the Class

Notice will be posted on the Settlement Website and Defendants' websites.

        3.      Cost of Notice: Costs of the Class Notice, whether by mail as set forth in § III.D.2.(b) above, publication as set forth in § III.D.2.(c) above, website, or otherwise, shall be paid by Defendants.

        4.      Claims Administrator to Effect Notice: The Claims Administrator shall be responsible for placing and mailing the Class Notice pursuant to § III.D.2.(b) and implementing the notice plan approved by the Court.

        5.      Certification Notice Given: Within thirty (30) days of completion of the publication of the Class Notice as described above, the Claims Administrator shall certify to the Court that it disseminated and published the Class Notice pursuant to the approved notice plan. The Claims Administrator shall also certify the dates that Class Notices were actually published as described above, provide a true copy of each Class Notice in each publication, and provide any other information relevant to the publication and mailing of the Class Notice and other Notices.

        6.      CAFA Notice: Defendants shall serve notice of this Settlement Agreement that meets the requirements of the Class Action Fairness Act of 1995, 28 U.S.C. § 1715, on the appropriate federal and state officials not later than 10 days after the filing of this Settlement Agreement with the Court.

    E.      Voluntary Exclusion of Class Members from Settlement Class

        1.      Opt Out Rights: Class Members have the right to exclude themselves ("Opt Out") from this Agreement and from the Settlement Class by timely submitting a request to Opt Out pursuant to § III.E.3. below. Class Members who so timely request to Opt Out shall be excluded from this Agreement and from the Settlement Class. Any Class Member who does not timely submit a request to Opt Out or does not otherwise comply with the agreed upon Opt

Out procedure approved by the Court shall be bound by the terms of this Agreement and the Final Approval Order and Judgment. Any Class Member who does not Opt Out of this Agreement shall be deemed to have taken all actions necessary to withdraw and revoke the assignment to any Person of any Claim against the Released Party.

Any Class Member who timely submits a request to Opt Out shall have until seven (7) days prior to the Final Approval Hearing Date in the Court to deliver to Plaintiffs' Lead Counsel and the Claims Administrator a written revocation of such Class Member's request to Opt Out. Plaintiffs' Lead Counsel shall timely apprise the Court of such revocations.

Within ten (10) days after the Opt Out Deadline, the Claims Administrator shall furnish Plaintiffs' Lead Counsel and Defendants' Counsel with a complete list in machine-readable form of all Opt Out requests submitted by the Opt-Out Deadline and not timely revoked.

2.   Deadline to Opt Out from Settlement Class: All Class Members will be given sixty (60) days after the Notice Date (the "Opt Out Deadline") to Opt Out.

3.   Request to Opt Out: A Class Member must Opt Out of the Settlement Class by notifying the Claims Administrator in writing postmarked on or before the Opt Out Deadline of his/her intention to exclude himself/herself from the Settlement Class. The Class Member seeking to Opt Out must include his/her name, address, telephone and signature in his/her written request to Opt Out and otherwise comply with the agreed upon Opt Out procedure approved by the Court. The initial determination that each request to Opt Out by a Class Member complies with the Opt Out procedures in this Agreement will be made by the Claims Administrator and is subject to final approval by the Court as part of the Final Approval of the Settlement Agreement. The Court may disallow any request for exclusion that fails to

comply with the provisions of Preliminary Approval Order or the Opt Out procedures otherwise approved by the Court.

F.   Procedures for Objecting to the Settlement

Any objection to this Settlement Agreement, including any of its terms or provisions, must be served on Jack Reise, Robbins Geller Rudman & Dowd LLP, 120 East Palmetto Park Road, Suite 500, Boca Raton, Florida 33432 and Scott Louis Weber, Patton Boggs LLP, The Legal Center, One Riverfront Plaza, 6th Floor, Newark, New Jersey 07102 and filed with the Court in writing no later than thirty (30) days prior to the Final Approval Hearing Date as set forth in the Class Notice (the "Objection Date"). Any person or entity filing an objection in the Court shall, by doing so, submit himself, herself or itself to the exclusive jurisdiction and venue of the United States District Court for the District of New Jersey.

G.   Motion for Entry of Final Approval Order and Judgment

1.   Hearing on Motion for Final Approval Order and Judgment: The Motion for Entry of Final Approval Order and Judgment of this Settlement Agreement will be set for hearing by the Court as soon as is practical. The Parties shall seek entry of a "Final Approval Order and Judgment" (in substantially the same form as Exhibit I hereto) that, *inter alia*:

(a)   Approves finally this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act, and other applicable law;

(b)   Determines that the Class Notice, as approved by the Preliminary Approval Order, constitutes reasonable and the best practicable notice reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Action, the terms of the Settlement Agreement, the right to object or opt-out, and the right to

appear at the hearing on Final Approval, the claims procedure, that the Class Notice is adequate and sufficient to all persons entitled to receive such notices, and meets the requirements of due process and other applicable rules or laws;

(d) Determines that there is no just reason for delay and that the Final Approval Order and Judgment shall be final and entered;

(e) Determines that the parties at all times acted in good faith and in compliance with Federal Rule of Civil Procedure 11; and

(f) Enters the Release described in the § IV.

2. <u>Effect of Entry of a Final Approval Order and Judgment</u>: The Claims Administrator's distribution procedures under the Settlement Agreement shall commence no earlier than seven (7) business days after the Effective Date.

## IV. RELEASE OF CLAIMS

A. <u>Release</u>

Upon entry of the Final Approval Order and Entry of Judgment by the Court, the Releasing Parties forever release and discharge all Released Claims against all Defendants and all Released Parties. For purposes of this Settlement Agreement, "Released Claims" means any individual, class, representative, group or collective claim, liability, right, demand, suit, matter, obligation, damage, loss, action or cause of action, of every kind and description, including the right to partake in any recalls of MTs instituted by Defendants in cooperation with the CPSC, that a Releasing Party has or may have, including assigned claims, whether known or unknown, asserted or unasserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party either in the Court or any other court or forum, regardless of legal theory, and regardless of the type of relief or amount of damages claimed, against any of the Released Parties arising from, or in any way relating to, the design,

18

sale, marketing, advertising, manufacture, distribution, donation, purchase, possession, acquisition, receipt or use of an MT.  Notwithstanding the foregoing, the term "Released Claim" does not include an individual claim for personal injury of a Releasing Party claimed to have been caused by, or related to, an MT.

B.    Notice Related to Section 1542 of the California Civil Code

All Parties to this Agreement specifically acknowledge that they have been informed by their legal counsel of Section 1542 of the California Civil Code and they expressly waive and relinquish any rights or benefits available to them under this statute.  California Civil Code § 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding Section 1542 of the California Civil Code, or any other statute or rule of law of similar effect, this Settlement Agreement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from or are in any way connected with the Actions.  All Parties to the Settlement Agreement have been advised specifically by their legal counsel of the effect of this waiver, and they expressly acknowledge that they understand the significance and consequence of this expressed waiver of California Civil Code Section 1542.

C.    Additional Mutual Releases

1.    On and after the Effective Date, each of the Released Parties shall be deemed to have fully, finally, and forever released, relinquished and discharged each and all of the Plaintiffs and each of the Class Members (except as to any individual or entity who has validly

19

requested exclusion from the Class), their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former partners, employees, officers and directors of each of them, the present and former attorneys, accountants, experts, consultants, insurers, and agents of each of them, each of the foregoing solely in their capacity as such, and the predecessors, heirs, assigns of each, from all claims of every nature and description, known and unknown, relating to the initiation, prosecution, non-prosecution, and/or resolution of the Action or the Released Claims.

2.      On and after the Effective Date, each of the Releasing Parties shall be deemed to have fully, finally, and forever released, relinquished and discharged each and all of the Defendants, their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former partners, employees, officers and directors of each of them, the present and former attorneys, accountants, experts, consultants, insurers, and agents of each of them, each of the foregoing solely in their capacity as such, and the predecessors, heirs, assigns of each, from all claims of every nature and description, known and unknown, relating to the defense and/or resolution of the Action or the Released Claims.  It is expressly agreed and understood that nothing in these foregoing provisions shall be construed to preclude any of the Parties from seeking the assistance of the Court to enforce any provision of the Settlement or this Agreement.

## V.    OTHER PROVISIONS

### A.    No Admission

Nothing herein shall constitute any admission as to any assertion, claim, or allegation made by any party, or as to the scope of liability.  The Defendants specifically deny any wrongdoing or liability, and this Settlement Agreement is entered to resolve all claims amicably and does not imply or suggest in any way fault or wrongdoing.  The Parties hereto agree that

this Settlement Agreement and its Exhibits, and any and all associated negotiations, documents, discussions, shall not be deemed or construed by anyone to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by Defendants or Released Party, or of the suitability of Plaintiffs' claims for class certification, or of the proper scope of liability under any statute or law.

     B.     <u>Settlement Agreement Inadmissible In Subsequent Litigation</u>

In the event that the Settlement contemplated by this Settlement Agreement is not approved or does not for any reason go forward, the existence of this Settlement Agreement and the Memorandum of Understanding, and any of their terms, shall not be admissible in any subsequent litigation, and no Party will ever attempt to introduce this Settlement Agreement and Release into evidence in any other legal matter.

     C.     <u>Press Releases and Other Disclosures</u>

Any party is permitted to further publicize the Settlement, provided that the substance, timing and dissemination of any such press release or communication must be mutually agreed upon by the parties.  However, Plaintiffs have the right to independently, and at their own expense, disseminate the Press Release over PR Newswire or some similar internet-based wire service with national reach up to five times without receiving prior approval from Defendants.

     D.     <u>Right to Rescind the Settlement Agreement</u>

Defendants' willingness to settle the Action on a class-wide basis and not to contest the accompanying certification of a Settlement Class is dependant upon achieving finality in the Action.  Consequently, each Defendant has the unilateral right, on its own behalf and not on behalf of any other Defendant, to terminate this Settlement Agreement, declare it null and void as to that Defendant, and have no further obligations under this Settlement Agreement by delivering a written notice of termination to all other Parties if any of the following conditions

subsequent occurs:

     1.     The Parties fail to obtain and maintain Preliminary Approval of the proposed settlement;

     2.     Any Court fails to enter a Final Approval Order and Judgment consistent with the provisions in Section III.G.; or

     3.     The settlement is not upheld on appeal, including review by any appellate court. The failure of the Court or any appellate court to approve in full the request by Plaintiffs' Lead Counsel for attorneys' fees and other expenses shall not be grounds for the Plaintiffs' Lead Counsel or the Settlement Class to cancel or terminate this Settlement Agreement.

     If the Settlement Agreement is not granted Final Approval or if the Settlement is not upheld on appeal, or is otherwise terminated for any reason before the Effective Date, the Settlement Class shall be decertified; the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Released Party and shall not be deemed or construed to be an admission or confession by any Released Party of any fact, matter, or proposition of law; and all Parties and Released Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

     E.     <u>Binding Effect</u>

     Once Final Approval is granted by the Court, this Settlement Agreement shall be binding upon and inure to the benefit of the Parties, including each Settlement Class Member and their successors and assigns.

     F.     <u>Defendants' Solvency</u>

     Each of the Defendants warrant, as to the payments made by or on behalf of the Defendants, that at the time of such payment that Defendant was not insolvent nor will the

payment required to be made by the Defendant render such Defendant insolvent within the meaning and/or for the purposes of the United States Bankruptcy Code, including §§101 and 547 thereof. This warranty is made by each of the Defendants and not by such Defendant's counsel.

G.    Choice of Law

Claims for breach of this Settlement Agreement shall be governed by and interpreted according to the substantive law of the State of New Jersey without regard to choice of law principles.

H.    Execution of Counterparts

The signatories may execute this Settlement Agreement in counterparts, each of which shall be deemed an original.

I.    Entire Agreement; Amendment

This Settlement Agreement, with its Exhibits, constitutes the entire and complete agreement among the Parties and supersedes all prior agreements, documents and understanding of the Parties related to the subject matter of this Settlement Agreement, including the Memorandum of Understanding. This Agreement shall not be modified in any respect except by writing executed by Defendants' Counsel and Plaintiffs' Lead Counsel.

J.    Continuing Jurisdiction and Exclusive Venue

Except as otherwise provided in this Agreement, each of the Parties, including each member of the Settlement Class, and Releasing Parties that are otherwise subject to the jurisdiction of a United States court hereby irrevocably submits to the exclusive jurisdiction and venue of the United States District Court for the District of New Jersey for any suit, action, proceeding, case, controversy, or dispute arising in the United States and relating to this Agreement and/or Exhibits hereto and negotiation, performance, or breach of same.

K.   Authority

Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement. Each of the undersigned shall use his or her reasonable efforts to effectuate this Settlement Agreement.

L.   No Party is the Drafter

None of the Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

M.   Computation of Time

In computing any period of time prescribed or allowed by this Settlement Agreement, the provisions of United States Federal Rule of Civil Procedure 6 shall govern.

N.   Signatures

The signatories to this Settlement Agreement may execute it in counterparts, each of which shall be deemed an original. Signatures may be provided via facsimile or in PDF.

Dated: July 27, 2011

| | |
|---|---|
| ROBBINS GELLER RUDMAN & DOWD LLP<br><br>_____<br><br>Jack Reise<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL  33432<br>561/750-3000<br><br>ROBBINS GELLER RUDMAN & DOWD LLP<br>John J. Stoia, Jr.<br>Rachel Jensen<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>619/231-1058 | PATTON BOGGS LLP<br><br>_Scott Louis Weber_<br>Scott Louis Weber<br>The Legal Center<br>One Riverfront Plaza, 6th Floor<br>Newark, New Jersey  07102<br>973/848-5600<br><br>KASOWITZ, BENSON, TORRES &<br>FRIEDMAN LLP<br>Kara Headley<br>1633 Broadway<br>New York, New York 10019<br>212/506-1700<br><br>_Counsel for Defendants_ |
| KAPLAN FOX & KILSHEIMER LLP<br><br>_____<br><br>Laurence D. King<br>350 Sansome Street, Suite 400<br>San Francisco, CA 94104<br>415/772-4700<br><br>KAPLAN FOX & KILSHEIMER LLP<br>Frederic S. Fox<br>850 Third Avenue, 14th Floor<br>New York, NY 10022<br>212/687-1980<br><br>KAPLAN FOX & KILSHEIMER LLP<br>William J. Pinillis<br>160 Morris Street<br>Morristown, NY<br>973/656-0222<br><br>_Attorneys for Plaintiffs and the Class_ | |

Dated: July 27, 2011

| ROBBINS GELLER RUDMAN & DOWD LLP | | PATTON BOGGS LLP |
|---|---|---|
| Jack Reise<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432<br>561/750-3000<br><br>ROBBINS GELLER RUDMAN & DOWD LLP<br>John J. Stoia, Jr.<br>Rachel Jensen<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>619/231-1058 | | Scott Louis Weber<br>The Legal Center<br>One Riverfront Plaza, 6th Floor<br>Newark, New Jersey 07102<br>973/848-5600<br><br>KASOWITZ, BENSON, TORRES &<br>FRIEDMAN LLP<br>Kara Headley<br>1633 Broadway<br>New York, New York 10019<br>212/506-1700<br><br>*Counsel for Defendants* |
| KAPLAN FOX & KILSHEIMER LLP<br><br>Laurence D. King<br>350 Sansome Street, Suite 400<br>San Francisco, CA 94104<br>415/772-4700<br><br>KAPLAN FOX & KILSHEIMER LLP<br>Frederic S. Fox<br>850 Third Avenue, 14th Floor<br>New York, NY 10022<br>212/687-1980<br><br>KAPLAN FOX & KILSHEIMER LLP<br>William J. Pinillis<br>160 Morris Street<br>Morristown, NY<br>973/656-0222 | | |
| *Attorneys for Plaintiffs and the Class* | | |

Dated: July 27, 2011

| ROBBINS GELLER RUDMAN & DOWD LLP | PATTON BOGGS LLP |
|---|---|
| Jack Reise<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL  33432<br>561/750-3000 | Scott Louis Weber<br>The Legal Center<br>One Riverfront Plaza, 6th Floor<br>Newark, New Jersey  07102<br>973/848-5600 |
| ROBBINS GELLER RUDMAN & DOWD LLP<br>John J. Stoia, Jr.<br>Rachel Jensen<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>619/231-1058 | KASOWITZ, BENSON, TORRES &<br>FRIEDMAN LLP<br>Kara Headley<br>1633 Broadway<br>New York, New York 10019<br>212/506-1700<br><br>*Counsel for Defendants* |
| KAPLAN FOX & KILSHEIMER LLP<br><br>Laurence D. King<br>350 Sansome Street, Suite 400<br>San Francisco, CA 94104<br>415/772-4700<br><br>KAPLAN FOX & KILSHEIMER LLP<br>Frederic S. Fox<br>850 Third Avenue, 14th Floor<br>New York, NY 10022<br>212/687-1980<br><br>KAPLAN FOX & KILSHEIMER LLP<br>William J. Pinillis<br>160 Morris Street<br>Morristown, NY<br>973/656-0222<br><br>*Attorneys for Plaintiffs and the Class* | |